**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH CAROLINA**

**CHARLESTON  DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Case No.:  2:17-CR-556 |
| | ) | |
| vs. | ) | |
| | ) | **MOTION TO RECONSIDER** |
| Christopher Austin, | ) | **AND TO SUPPLEMENT** |
| | ) | DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| Defendant. | ) | |
| _____ | ) | |

A suppression hearing was held on June 12, 2018 and this Court issued an order on July 12, 2018 granting in part and denying in part the Defendant's motion to suppress.  The Defendant asks to supplement the evidence presented and thereafter to ask this Court to reconsider it's order denying the Defendant's motion to suppress.  The grounds for this motion are as follows.

In *Ker v. State of California,* 374 U.S. 23, 34, 83 S. Ct. 1623, 1630, (1963), the Supreme Court held that the "States are not . . . precluded from developing workable rules governing arrests, searches and seizures to meet `the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain."

The search that resulted in the arrest of the Defendant was not legal by South Carolina law, and did "violate the constitutional proscription of unreasonable searches and seizures and

the concomitant command that evidence so seized is inadmissible." This Court based its order in part on the testimony of Adam Bedard, the government's first witness.

On September 8, 2016, Mr. Bedard had been a game warden for the South Carolina Department of Natural Resources. He testified that he was on patrol on September 8, 2016 when he observed a truck parked in a privately owned field. Suppression Hearing Transcript (hereafter "Tr.") at 28. He himself was on a public road, and it was the middle of the day. Tr. 29. He did not observe anything illegal happening. Tr. 29.

Only after he had entered upon the private land did he observe something unusual in regard to the truck. Tr. 29. When he was about 10 feet away from the back of the truck, he observed a long gun, a hunting gun, sticking out of the driver's side window. Tr. 30. There was also nothing illegal in this either, because Mr. Bedard testified that this was an appropriate place to go hunting, and it was hunting season. Tr. 30.

He went to the driver's side window and asked Mr. Austin what he was doing, and Mr. Austin answered that he was hunting. Tr. 29-30. He noticed that Mr. Austin was looking at pornography on an iPad, which he testified was also not criminal or illegal. Tr. 30-31. Mr. Bedard also testified that Mr. Austin had permission to hunt in the private fields and on the private property where he and the pickup truck were located. Tr. 26. Only after Mr. Bedard started questioning Mr. Austin about a hunting license was there the first indication that something was wrong. Tr. 32.

The agent testified that if he saw something in an open field, he was allowed to check it out. Tr. at 7. He testified that "the open fields doctrine is the – is what we as game wardens, we operate on." Tr. at 40. He also testified that there was a handbook that he had been given that

2

said he was allowed to go on private land to investigate. Tr. at 41. He stated that the handbook referred to specific sections of South Carolina law. Tr. 41-42.

Since that hearing the Defendant was able to determine that there were and are no handbooks or pamphlets that the Department of Natural Resources used or possessed relating to the open fields doctrine. Ex. 1, Counsel for Dept. of Natural Resources. In fact there is "[n]o applicable agency policy or directive." There are no agency related documents regarding the ability or right of agents to enter upon private property. Ex. 1.

In fact, agents of the Department of Natural Resources may not conduct investigations upon private land "except at the request of the owner or owners of such lands and waters." Ex. 2, S.C. Code Ann. 1976 § 50-3-90. Section 50-3-420 provides immunity from prosecution when an agent of the Department of Natural Resources *trespasses on private property.*" Ex. 1, S.C. Code Ann. 1976 § 50-3-420. Thus South Carolina law does not allow an agent of the Department to trespass on private land.

There is no dispute that the owners of this private field did not request the agent to conduct an investigation on this land.

There is no dispute that Agent Bedard did not have permission to come on to this private land.

"[U]nder certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, (1971). However, "plain view alone is never enough to justify the warrantless seizure of evidence." *Id.* at 468, 91 S.Ct. at 2039. The "discovery of evidence in plain view must be inadvertent." *Id.* at 469, 91 S.Ct. at 2040.

The essential predicate to the warrantless seizure of incriminating evidence is that "the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed." *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308 (1990). Two additional conditions must be satisfied to justify a warrantless seizure: (1) the object must be in plain view and (2) the object's incriminating nature must be immediately apparent. *Id.*

In this case, Mr. Bedard was on a public road and saw nothing illegal, just a truck parked in a field. He chose to trespass on private property and so was not legally present. It wasn't until he was on the private property, property to which he did not have a right of access, did he observe the hunting gun. Even then, it was an appropriate place for hunting and it was hunting season, so there was no "incriminating nature" to a gun in a field in a pickup truck - it was not "immediately apparent" that there was anything wrong. Indeed Mr. Bedard so testified.

This Court has based its decision to deny Defendant's motion to suppress the search of the pickup truck because of the threshold issue of whether the Defendant had standing to assert that he had a legitimate expectation of privacy in the vehicle. The evidence presented at the suppression hearing was that the truck was reported stolen. No evidence was presented that the Defendant had stolen it or that he had been charged with stealing it.

In *Byrd v. United States,* 138 S.Ct. 1518 (2018) the Supreme Court made clear that the "concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched, but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits." *Id.* at 1530. The Court further instructed that "Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional

4

question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Id.*

Thus, standing need not be addressed first. Courts since *Byrd* was decided have stated that *"Byrd* is actually a generous decision in the area of standing for those who can manage an appropriate modicum of possession or control." *United States v. Oakes,* 320 F. Supp. 3d 956, 960 (M.D. Tenn. 2018). The Defendant requests the opportunity to present the appropriate modicum of possession of the truck to satisfy this standard.

Furthermore, the Defendant asks this Court to reconsider that the framing of the issue of standing may be misplaced. The Defendant was lawfully on private property with the permission of the owners. The agent's investigation took place in a constitutionally protected area, i.e., private property. The Defendant, as testified by Mr. Bedard, had the right to be on the land and to hunt on the land. The Defendant had standing to protest any trespass on the land.

In *Minnesota v. Carter,* the Supreme Court stated that the Fourth Amendment protects not only home owners, but also renters and their families, overnight guests, boarders and servants. 525 U.S. at 94-97, 119 S.Ct. 469. An overnight guest has Fourth Amendment standing even when he was never given a key to the home and his host was present at the time of the search. *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684 (1990).

"While law enforcement officers need not 'shield their eyes' when passing by the home 'on public thoroughfares,' an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendment's protected areas. In permitting, for example, visual observation of the home from 'public navigable airspace,' we were careful to note that it was done 'in a physically nonintrusive manner.' [O]ur law holds the

property of every man so sacred, that no man can set his foot upon his neighbor's close without his leave." *Florida. v. Jardines,* 569 U.S. 1, 7-8, 133 S. Ct. 1409, 1415, (2013) (internal citations omitted).

The Defendant hereby requests this Court to reconsider the denial of his suppression motion and the opportunity to supplement his motion to suppress.

Respectfully submitted,

*s/Ann Briks Walsh*
Ann Briks Walsh
Assistant Federal Public Defender
145 King Street, Suite 325
Charleston, SC 29402
(843) 727- 4148
Attorney ID #5102

February 12, 2019

6